UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMANDA PENNUCCI-ANDERSON, | ) Case NO. 19-cv-271 A(2) |
| | ) |
| Plaintiff, | ) Jury Trial Demanded |
| | ) |
| v. | ) |
| | ) |
| OSCHNER HEALTH SYSTEM. | ) |
| | ) |
| Defendant. | ) |

## SECOND AMENDED COMPLAINT

Plaintiff, Amanda Pennucci-Anderson ("Plaintiff"), by her attorney, Natalie Blackman, for her Second Amended Complaint against Defendant, Oschner Health System ("Defendant"), states as follows:

## NATURE OF THE ACTION

1.

Plaintiff brings this action under the Civil Rights Act of 1964, *42 U.S.C. Section 2000e* et seq., as amended by the Civil Rights Act of 1991 ("Title VII") and the Pregnancy Discrimination Act of 1978; to challenge Defendant's unlawful discrimination against her based on her gender and pregnancy.

## JURISDICTION AND VENUE

4.

Jurisdiction is based on *28 U.S.C. §§ 1331* and *1343*, and principles of pendent and supplemental jurisdiction.

5.

Venue is proper in the Eastern District of Louisiana pursuant to *28 U.S.C. § 1391*(a).

## PARTIES

6.

Plaintiff has been employed as a Registered Nurse with Defendant for the past five years.

7.

Defendant is a corporation headquartered in Louisiana and registered to do business in the State of Louisiana.

## FACTUAL ALLEGATIONS

***Plaintiff was subjected to discrimination based on her gender and pregnancy.***

8.

Plaintiff began her employment as a Registered Nurse with Defendant on March 10, 2014.

9.

Plaintiff has always taken great pride in her job and was consistently on good standing and well-respected by her fellow employees.

10.

The climate of Plaintiff's work environment changed approximately six months before she was terminated, a change coinciding with Plaintiff becoming pregnant.

11.

In April 2017, Plaintiff underwent in vitro fertilization after years of devastating infertility. The treatment worked and Plaintiff became pregnant at the age of thirty-five.

12.

Following her treatment, Plaintiff's doctor recommended a light weight restriction--no lifting over fifty pounds until the first ultrasound.

13.

This is an easily accommodated light restriction and is conventional in early pregnancy.

14.

Plaintiff's unit director, Angelle Bonura, asserted that there was "no light duty nursing" and that Plaintiff must work at her own risk with no restrictions or go on disability and contact FMLA.

15.

Plaintiff was removed from the schedule and her General Purpose Time (GPT) was used to fill in her scheduled hours.  Plaintiff was told she would not be put back on the schedule until she had produced a clearance from her physician and that her GPT would continue to be used until it was exhausted completely.

16.

In the following months, two non-pregnant co-workers on Plaintiff's unit were allowed to go on light duty for minor injuries.

17.

Kenneth Bird was allowed to go on light duty for a minor injury.

18.

Yasmin Godsmarck was allowed to go on light duty for a minor injury.

19.

New employees were hired over summer, some of whom Plaintiff assisted in training. These additional hires resulted in Plaintiff's unit being overstaffed.

20.

Plaintiff's scheduled shifts were frequently cancelled and her GPT was used to fill these absences without her consent.

21.

Plaintiff addressed this with her supervisor and was told that Defendant's policy allowed Defendant to cancel her shifts without her consent.

22.

Plaintiff asserts that Defendant's actions amounted to an attempt to exhaust all her GPT so she would have none banked for her maternity leave and to encourage her to resign her employment.

23.

At the same time, Plaintiff was receiving multiple phone calls and texts on her days off from another supervisor, Colleen Rogers, who attempted to coerce Plaintiff to work off the clock.

24.

On July 7, 2017, Plaintiff was put on a 60-day probation after accidentally allowing her ACLS to expire. Meanwhile, the cancellations of her shifts continued.

25.

On September 16, 2017, Plaintiff was called into a meeting with her supervisor and HR. According to them, Plaintiff had fallen under suspicion for administering more pain medication than the nurse who preceded her.

26.

Plaintiff had administered the medication within the ordered parameters. Plaintiff was drug tested and was told if the results were negative she could return to work without any repercussions to her job. However, if the test was positive, she would be fired.

27.

The drug test results were negative.

28.

However, Plaintiff was still fired. Defendant's alleged 50mcg of the substance was unaccounted.

29.

Plaintiff was not allowed to verify this by seeing the actual electronic medication record.

30.

Plaintiff's termination letter states that she was then under a 60-day probation period, and that this was the reason why the medication error resulted in her termination

31.

Because Plaintiff's 60-day probation began on July 7, 2017, she would have completed the probation period before her date of termination.

32.

Plaintiff alleges that the motivation in firing her arose not from any issue with her performance as a Registered Nurse, or with her charting, but instead from her pregnancy, request for accommodations, and pending maternity leave.

33.

Of importance, Todd Holley, Plaintiff's coworker who also had a high pull rate for narcotics, was not drug tested like Plaintiff.

34.

Todd Holley had been reported several times for stealing.

35.

Angelle Bonura, the current unit director, refused to drug test him.

36.

Angelle Bonura was eventually replaced with a new unit director, who reviewed Mr. Holley's record and determined that he should be drug tested.

37.

Mr. Holley tested positive for multiple narcotics and was subsequently fired.

***Defendant Failed to Exercise Reasonable Care To Prevent and Correct Unlawful Conduct***

38.

Defendant's management directed and participated in the unlawful conduct by failing to prevent and promptly address any acts of gender and/or disability discrimination. Defendant willfully acted with malice and reckless indifference to Plaintiff's federally protected rights.

***Plaintiff Suffered Damage***

39.

As a direct result of Defendant's unlawful conduct, Plaintiff has suffered from emotional distress, humiliation, and mental anguish.

40.

Plaintiff has suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct. In addition, Plaintiff has incurred attorneys' fees and costs based on Defendant's unlawful conduct.

*Punitive Damages*

41.

Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's protected rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

42.

Plaintiff realleges paragraphs 1 through 41 and incorporates them by reference herein.

43.

Plaintiff was discriminated against because of her gender in violation of Title VII of the Civil Rights Act of 1964 and *42 U.S.C. Section 2000e* et seq., which prohibits discrimination against any person based on gender with respect to terms, conditions or privileges of employment and prohibits retaliatory conduct for participating in protected activity.

44.

At all times herein, Plaintiff was qualified for her job. Plaintiff was employed by the Defendant as a Registered Nurse beginning in 2014 and was consistently on good standing and well-respected by her fellow employees.

45.

Plaintiff experienced adverse employment action from the Defendant, including termination.

## COUNT II

### PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

46.

Plaintiff realleges paragraphs 1 through 45 and incorporates them by reference herein.

47.

Title VII of the Civil Rights Act of 1964 and *42 U.S.C. Section 2000e* et seq. requires that women affected by pregnancy, childbirth or related medical conditions must "be treated the same for all employment-related purposes … as other persons not so affected but similar in their ability or inability to work." Discrimination on the basis of pregnancy, childbirth or related medical conditions is treated as sex discrimination.

48.

At all relevant times herein, Plaintiff was affected by pregnancy. In April 2017, Plaintiff became pregnant after undergoing in vitro fertilization.

49.

Plaintiff sought an accommodation due to her pregnancy. Following her treatment, Plaintiff's doctor recommended a light weight restriction--no lifting over fifty pounds until the first ultrasound. This is an easily accommodated light restriction and is conventional in early pregnancy.

50.

Defendant refused to accommodate Plaintiff. Plaintiff's unit director, Angelle Bonura, asserted that there was "no light duty nursing" and that Plaintiff must work at her own risk.

51.

Plaintiff was removed from the schedule and her General Purpose Time (GPT) was used to fill in her scheduled hours. Plaintiff was told she would not be put back on the schedule until she had produced a clearance from her physician and that her GPT would continue to be used until it was exhausted completely.

52.

Despite failing and refusing to accommodate Plaintiff, Defendant did accommodate others similar in their ability or non-ability to work. In the following months, two non-pregnant co-workers on Plaintiff's unit, Kenneth Bird and Yasmin Godsmarck, were allowed to go on light duty for minor injuries.

53.

Plaintiff suffered an adverse employment action: she was terminated from her employment with Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court find in her favor and against the Defendant as follows:

a. Declare that the acts and conduct of Defendant violate Title VII;

b. Award Plaintiff the value of all lost income and front and/or back pay lost as a result of Defendant's unlawful conduct;

c. Award Plaintiff the value of all future compensation and future benefits she will lose as a result of Defendant's unlawful conduct;

d. Award Plaintiff damages for emotional distress, humiliation, mental anguish, loss of enjoyment of life, and inconvenience;

e. Award Plaintiff compensatory damages;

f. Award Plaintiff punitive damages;

g. Award Plaintiff prejudgment interest;

i. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

j. Award Plaintiff such other relief deemed just, equitable, and proper by this Court.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted,

s/ Natalie Blackman

Natalie Blackman #35662
8550 United Plaza Blvd #702
Baton Rouge, LA 70809
Phone: (318) 639-4529
Fax: (888) 463-4952

## CERTIFICATE OF SERVICE

I certify that on July 8, 2019, I electronically filed the foregoing with the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Natalie Blackman